**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

CONTEMPORARY ARTS FOUNDATION, INC.
d/b/a Rubell Family Collection,

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Contemporary Arts Foundation, Inc. ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.      Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant's business.

2.      Today's consumer-centric businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination**.

3.      When museums and their corresponding museum shops offer services that are inaccessible and then do not notice the public that those services are inaccessible, those museums and their corresponding museum shops are not only marginalizing the visually impaired community, but are actively excluding those members of the public who are visually impaired from their museums and their corresponding museum shops.

4.      This case arises out of the fact that Defendant has operated its museum and museum shop in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's museum and museum shop.

5.      Defendant operates a place of public accommodation which is a contemporary art museum under the name "Rubell Family Collection." Rubell Family Collection offers for sale to the public general admission tickets, a variety of event spaces within the museum to reserve and rent, and gift shop merchandise (such as limited edition artwork and art books), all of which is heretofore referenced as "goods, services, and accommodations," "gift shop merchandise," or "museum merchandise".

6.      This complaint seeks declaratory and injunctive relief to have Defendant update its policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication so that individuals who are blind or visually impaired can communicate with Defendant effectively and timely such that their access to Rubell Family Collection and its corresponding museum shop is not impeded; as such impediment has rendered Defendant's physical museum and museum shop (location) not fully accessible to the visually impaired.

## JURISDICTION & VENUE

7.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

8.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its Website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, the Defendant's museum and associated museum shop are located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a Florida not for profit corporation.

9.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

10.      Plaintiff Juan Carlos Gil is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA.

11.      Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

3

12.     Due to his disabilities, the Plaintiff requires the use and accompaniment of a service animal, as his service animal is a trained seeing-eye dog.  Plaintiff's requirement for use of a service animal is defined by 28 C.F.R. §36.104 and Florida Statue §413.08(1)(d).

13.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

14.   Plaintiff requires that electronic document information be saved in an accessible format such as HTML or an accessible PDF format.

15.     Defendant Contemporary Arts Foundation, Inc. (also referenced as Defendant) is the owner and operator of an art museum under the name "Rubell Family Collection."

16.     Rubell Family Collection is a contemporary art museum that was first established in 1964 in New York City by Mera and Don Rubell. It is now one of the world's largest, privately owned, publicly accessible contemporary art collections. Since 1993, the Rubell Family Collection is exhibited within a 45,000-square-foot repurposed Drug Enforcement Agency confiscated goods facility. The foundation also maintains an internship program, an ongoing lecture series, and an extensive artwork loan program to facilitate exhibitions at museums around the world.  In addition, the foundation has a public research library containing over 40,000 volumes, multiple event spaces available for reservation, and a comprehensive contemporary art bookstore with items for sales on-site and online.

## FACTS

17.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is an organization which owns and operates a contemporary art museum under the name "Rubell Family Collection." The Rubell Family Collection is open to the public. As the owner and operator of a museum, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] museum, library, gallery, or other place of public display or collection," 42 U.S.C. §12181(7)(H) and 28 C.F.R. §36.104(2).

18.     The Rubell Family Collection also contains a gift shop which is a place of public accommodation as defined as: "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," pursuant to 42 U.S.C. §12181(7)(E).

19.     The Rubell Family Collection (and the gift shop located therein) is open to the public and is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §§s 12181(7)(E) & (H) and 28 C.F.R. Part 36. Defendant's Rubell Family Collection is also referenced throughout as "Place of Public Accommodation," "Rubell Family Collection," or "museum."

20.     Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.rfc.museum ("Website").

21.     Defendant's Website is offered by Defendant as an electronic on-line store which permits the public to obtain information on the museum's current exhibitions, admission, merchandise, and available event spaces and PDF of the museum's floor plans. The public can also obtain information on museum policies, and other information the Defendant seeks to communicate to the public. Further, the public can pay for gift shop merchandise online. From the Website, the public can access the museum's current, past, and upcoming exhibits, view artwork on loan, contact the museum's via their online contact form, view hours of operation and the times of complimentary guided tours, and access the staff directory.

22.     For all of the reasons as delineated herein, the Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(E) & (H) of the ADA[1].

23.     Additionally, Defendant's Website is also a public store that is on-line, where the public can view and purchase Rubell Family Collection gift shop merchandise online (and have the purchased merchandise delivered to one's home). Therefore, the Website is itself a sales establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(E).   As such, the Website must comply with all requirements of the ADA.

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

24.    Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "PDF."

25.    Blind and/or impaired persons require assistive devices (such as screen reader software) to read/comprehend content when it is provided in Portable Document Format ("PDF"), or "electronic documents."

26.   The electronic documents offered on Defendant's Website are not coded for accessible to screen reader software.  Therefore, online demand viewing of electronic documents on Defendant's Website is not an option available to persons with vision disabilities.

27.    Plaintiff is a customer who is interested in cultural events which includes contemporary art museums and exhibitions such as Rubell Family Collection located at 95 Northwest 29th Street, Miami, Florida 33127. Plaintiff is particularly interested in making a trip to the Rubell Family Collection to learn about contemporary works of art which are uniquely presented by the instillations within the Rubell Family Collection and in purchasing object of art.

28.    Plaintiff called Defendant to inquire about admission prices and the current exhibitions on display at the Rubell Family Collection with the intent of then going to the Rubell Family Collection in person and becoming a patron and learning about the art merchandise in the museum store. However, Defendant's representative failed to fully assist Plaintiff and referred him to its Website.

29.    Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

30.     Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites and the ability to access/comprehend electronic documents.

31.     When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

32.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[2]. Furthermore, Defendant's Website does not have the sign of website accessibility[3].

33.     Defendant's Website was inaccessible so Plaintiff could not (among other things):

> a.   find out which art installations were on display, and if Defendant offered guided tours through the museum space;
> b.   learn about the museum's policies and history;
> c.   shop for art merchandise online.

34.    Plaintiff has tried and has been unable to access and comprehend the Defendant's Website and the electronic documents located therein. By denying Plaintiff the opportunity to comprehend electronic documents due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff (and other blind and visually impaired individuals) the opportunity to participate in or benefit from the financial services, goods

---

[2]  "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[3] 

and accommodations afforded to the public (non-disabled persons and persons who are not visually impaired).

35.     Plaintiff's expectation of participating in online shopping was destroyed since he could not access Defendant's Website at all to avail himself of the latest art themed merchandise which Defendant offers to the public.

36.     The fact that Plaintiff could not access the Defendant's Website and could not comprehend the electronic documents contained therein left Plaintiff excluded from accessing museum merchandise and museum exhibitions and further left him with the feeling of segregation, rejection, isolation, and unable to participate in the American lifestyle, such as in this case purchasing museum merchandise and enjoying the museum exhibitions in a manner equal to that afforded to others who are not similarly disabled.

37.     Plaintiff's inability to inability to enjoy and learn about the Rubell Family Collection's exhibits, admission, event spaces, and merchandise resulted in a *virtual barrier* due to the inaccessible Website and the documents contained therein has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's Rubell Family Collection and to the goods, services, and accommodations offered by Defendant. Thus Plaintiff has hindered, impeded and inhibited Plaintiff's entry to Defendant's museum. Plaintiff has missed out on enjoying the exhibitions, gift shop merchandise, and considering the museum for events at Defendant's museum and gift shop. Plaintiff has suffered as a result and has suffered particularized harm and an injury in fact.

38.     While the Plaintiff could certainly make arrangements for transportation of himself and his wheelchair to the Rubell Family Collection located at 95 Northwest 29th Street, Miami, Florida 33127, but without access to the Rubell Family Collection

information as provided on its Website, Plaintiff faces a great deal of uncertainty, anxiety, and foreboding in physically undertaking such an outing because he lacks basic understanding of the "*who, what, where, and how*" to physically travel to the Rubell Family Collection museum and gift shop.

39.   By denying Plaintiff the opportunity to comprehend documents and Website due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in, or benefit from, Defendant's goods, services, and accommodations as afforded to the public (non-disabled persons and persons who are not visually impaired).

40.   Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with Defendant in order to obtain access to Defendant's physical museum and gift shop location in order to participate in the goods and services offered at the Rubell Family Collection. Plaintiff will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

41.   On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

42.   On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its electronic documents and Website (in general).

43.   On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

44.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website and the electronic documents therein, accessible to the visually impaired community.

45.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its shops.

46.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

47.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

48.     Defendant and alike museums are fully aware of need to provide full access to all visitors to its Website.[4]

49.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

50.     According to the National Federation for the Blind[5], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[6].

---

[4] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
 (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

51.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to investigate and visit a museum and purchase merchandise at that museum's gift shop by himself.

52.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

53.     Juan Carlos Gil has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

54.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth herein above.

### Requirement for Effective Communication

55.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

56.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R.

---

[5] See  https://nfb.org/blindness-statistics
[6] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

57.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

58.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

59.     Defendant's Website (together with the electronic documents contained therein) has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Place of Public Accommodation**

60.     By virtue of the fact that the Rubell Family Collection is open to the public, it is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §§s 12181(7)(E) & (H). The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

61.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose an art museum, the visually impaired have no access to the goods and services of that art museum, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

62.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[7]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

63.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil  v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Plaintiff v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public

---

[7] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm 0(comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

64.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

65.     The www.rfc.museum website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(H) as an integral part of Defendant's museum by providing the public information on the location of Defendant's museum, and offers the public the ability to be educated as to the exhibitions  which Defendant offers to the public.

66.     The www.rfc.museum website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(H) as an integral part of Defendant's Rubell Family Collection by providing the public information on the location of Rubell Family Collection, and offers the public the ability to be educated as to exhibitions at the museum.

67.     Furthermore, the Website is also a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(E) as it is an online store, where the public may purchase Rubell Family Collection merchandise online through the Website (which meets the definition of 'sales establishment').

68.     In addition, Defendant's representatives within its museum have referred customers to Defendant's Website for additional information, as the Website provides information  regarding  information  regarding  museum  hours,  art  installations,

merchandise available for sale, and event spaces such that the Website is an integral part of the public's needs with respect to the Rubell Family Collection.

69.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

70.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[8] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[9] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

---

[8] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[9] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

71.     Recent case law supports that the intangible barriers presented within Defendant's Website and electronic documents therein are violative of the ADA.   In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[10], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

72.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiff's injuries are real, have occurred, and are continuing. Plaintiff's injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

73.     Plaintiff's position is further supported by recent case law which states that organizations which have not fully updated their websites and electronic documents to insure accessibility for the visually impaired are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and

---

[10] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

74.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

75.     Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

76.     Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

**Barriers to Access**

77.     As a result of the inaccessibility of Defendant's Website and failure of the electronic documents contained therein to be accessible to visually impaired individuals,

those visually impaired individuals are denied full and equal access to the Rubell Family Collection physical location and museum shop online services as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

78.     Defendant's Website is not accessible to users who are visually impaired such that visually impaired are unable to go to the Website and obtain the most perfunctory information such as available merchandise, what kind of exhibits are currently on display, the museum's location and hours of operation, guided tour times, and cost of admission.

79.     Further, the Website does not offer include the universal symbol for the disabled[11] and the symbol for website accessibility[12] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

80.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website and Electronic documents contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**Electronic documents**

81.     Defendant's website contains one or more links to an electronic document attachment.    An example of such links are as follows: the museum's 1st and 2nd floor

---

[11] , or HTML "Accessibility" link for those individuals who are visually impaired

[12]

plans at https://rfc.museum/images/stories/RFC/AboutUs/Floorplan-2011-1stFloor.pdf

and at https://rfc.museum/images/stories/RFC/AboutUs/Floorplan-2011-2ndFloor.pdf. In

addition, certain informational news about the museum is available only in PDF form,

such       as       the       museum's       hours       during       art       basal       at

https://rfc.museum/images/stories/archive/RFC-PressRelease_FINAL.pdf and archived

stores about past and present art exhibitions and artists, such as *"Behind Artist Allison*

*Zuckerman's Rapid Rise From Gallery Assistant to the Rubell Family's Newest*

*Obsession" at* https://rfc.museum/images/stories/archive/20171205-artnet.pdf. The

electronic document's (attachment's) flat surface does not contain accessible coding. The

electronic document does not include a text-based format (or equivalent). Defendant has

not added 'alt[13]' tags or long descriptions for the electronic document within its website.

The electronic documents have not been provided in HTML or with a text equivalent, and

is not a webpage[14], therefore, it is inaccessible to the visually impaired.

82.    In order to meaningfully access electronic documents, blind and visually

impaired individuals require that electronic documents be saved in an accessible format.

Much of the content provided in electronic document (flat surface) format within

Defendant's Website is not accessible for persons with screen readers.

83.    Providing electronic documents in a format that can be recognized by

screen reader software and therefore making those electronic documents accessible to

the visually impaired would not result in any undue burden to Defendant and would not

fundamentally change the nature of Defendant's goods and services.

---

[13] 'alt' refers to 'alternative text'
[14] (which is an internet document usually in HTML)

84.   The failure of Defendant's electronic documents to be accessible impedes Plaintiff (and other similarly situated visually impaired individuals) from fully accessing the financial services, goods and accommodations provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

85.   The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's electronic documents and Website. These violations are ongoing.

86.   As a result of the inadequate development and administration of Defendant's electronic documents and Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

87.   Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a) Require Defendant adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.rfc.museum website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.rfc.museum website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the

information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating the Rubell Family Collection (location) and becoming informed of museum merchandise available at the museum gift shop and online, becoming a patron, and donating to the museum, and of viewing electronic documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the goods and services made available to the public through Defendant's Website and through Defendant's physical museum location.

88.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Contemporary Arts Foundation, Inc.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Contemporary Arts Foundation, Inc. and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff (and other individuals with visual impairments) equal

access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.rfc.museum website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) enter an Order requiring Defendant to update all electronic documents made available to the public to remove barriers in order that individuals with visual disabilities can access the electronic documents to effectively communicate with Defendant to the full extent required by Title III of the ADA;

d) pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring the electronic documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant

has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[15] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of Defendant's Website;

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

g) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

h) enter an Order requiring Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its electronic documents so they are accessible to individuals with visual disabilities;

---



15

i)  require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents continue to be accessible to individuals with visual disabilities;

j)  The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

k)  The Court award damages in an amount to be determined at trial;

l)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 11th day of April, 2018.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*